Mr. Shanice, am I pronouncing that right? Shanice, Your Honor. Shanice. So you've reserved three minutes for rebuttal. Yes, Your Honor. So that gives you seven to begin. You may start. Thank you. Judge Sullivan, may it please the Court. My name is David Shanice. I represent Plaintiff Appellant Ronald Ketcham. This is my second time appearing on this case before this Court. And we've briefed and argued a lot of issues. But I'm going to focus on what I believe is the core of this case, which is the legal standard of Graham v. Conner, the Supreme Court's 1989 decision, setting forth the test for excessive force in police-civilian interactions. There's a three-part test that the Court set forth in Graham v. Conner. And there's no dispute here because that only one of the factors is in play. The magistrate judge who presided over the trial found, and the appellees have not challenged on appeal, that the first two Graham factors did not justify a use of force. Only the third arguably justified a use of force, and that factor was whether Mr. Ketcham resisted arrest or attempted to evade arrest by flight. The fundamental point that we've argued and that I will focus on in my argument today is that the word arrest appears twice in that standard. And it cannot be said that Ronald Ketcham attempted to resist arrest or evade arrest by flight because, as the district court found, he did not know he was being arrested. So Mr. Ketcham testified that at some point during the encounter, he noticed Officer Patterson was wearing a badge. And if that's right, and said there's a firearm being properly holstered as well, but if that's right, then if the badge was visible, then doesn't that make it objectively reasonable for an officer to believe that someone is resisting arrest? No, Your Honor, and here's why. Yes, the Officer Patterson did testify that he was wearing a badge hung around his neck by a shoe. I'm talking about Ketcham's testimony. Yes, I understand. Okay. Patterson acknowledged that the badge was hung around his neck by a shoelace. That's at A241. Mr. Ketcham acknowledged he saw a badge but couldn't discern what it was. Now, the officers were in plain clothes and an unmarked car. One key reason why police officers wear uniforms and drive marked vehicles is so they're readily identifiable as police officers. That's fairly clear. The reason why police officers sometimes wear plain clothes and travel in unmarked cars is so that they are not readily identifiable as police officers, and there can be no reasonable argument to the contrary. Number two, the district court made a factual finding that Mr. Ketcham did not know, and had he known, none of this would have happened. Yeah, but so the R&R said at some point as Patterson approached him, Mr. Ketcham saw that he was wearing a badge or shield around his neck. Ketcham's testimony was, I saw a shield, but I could not make it out what it was. So your response is that it sounds like that given the totality of the circumstances, that they were plain clothes, unmarked car, that that fact that he noticed a badge is not enough to what? To make the officers believe that somebody was running away, was fleeing arrest? Well, you have to consider the third and most important factor, which is that Mr. Ketcham displayed unambiguous signs to these officers that he did not know that they were police officers. How? The first words out of his mouth to these police officers, the district court found, were, who are you? That was the first question Mr. Ketcham asked Officer Patterson. Officer Patterson did not respond, I'm a police officer. Instead, he responded, I'm taking you in. If that weren't enough, during the scuffle, as they're struggling and they're trying to put Mr. Ketcham in handcuffs, he is screaming, help, call the police, call 911. I can't imagine a more unambiguous showing that Mr. Ketcham did not know that he was dealing with police officers. Could these officers have said, sir, we are the police, we're placing you under arrest, of course. I think that's looking at it the wrong way. I mean, if the officer is wearing a badge, that sounds like it's not disputed, and Mr. Ketcham sees that badge, maybe doesn't know what to do with it, and obviously there's misunderstanding, but isn't it reasonable? That's the question. Objectively reasonable to think that somebody is fleeing arrest when they're running away from you, knowing that they've seen the badge. Well, there's no testimony that he was running away. The testimony was that when the officer approached him and said, who are you, Mr. Ketcham took one step back with his hands at his sides. That was the physical action that was attracted. A defensive posture was how the district court characterized it. Are you saying that was an erroneous finding? That was his characterization. We disagree with it, but it's a characterization, Your Honor. But the fact that he found was that Mr. Ketcham took a step back and or bent his knees slightly. That's what he said, a defensive posture, sort of like bracing. But Your Honor raised his fists, and that's very important because we established very clearly at the trial that Mr. Ketcham neither raised his arms nor balled his fists. Well, you have findings of facts, and you're stuck with them. I have such a clear error. I think we haven't argued that. I'm sorry? You have findings of facts from the magistrate. So what you think you established isn't relevant, quite frankly, counsel. What's relevant is what the findings of fact were, absent clear error, right? Well, that's what I'm talking about. All right, all right. So you have a finding that he struck a defensive posture, correct? That is a characterization, Your Honor, not a finding of facts. Then the officer administered an armbar, and Mr. Ketcham said that that also indicated to him that perhaps that this was a police officer administering this, correct? So now we are relying on Mr. Ketcham's subjective point of view. I'm talking about findings of fact, counsel. Yes. All right? So let's stick to what the findings of fact were. All right? Yes. Now, was that a finding of fact? Yes. Okay. And was there not a finding of fact that Ketcham at that point in time had suspected that this was a police officer? Yes, that was an irrelevant finding of fact. All right. The problem is don't parse your argument with what you wanted to prove. I can appreciate what you wanted to prove, but you have findings of fact, and you haven't argued that those were clearly erroneous. So you're stuck with those. Yes, indeed. Okay? Because when you were here before, there were allegations, and the focus was with regard to the injuries that Mr. Ketcham sustained as he was entering the vehicle where he banged his head. And Judge Pooler's opinion is quite clear about that with regard to that being a substantial issue of fact. That was resolved against him at trial, was it not? I'm sorry. I didn't catch that, Your Honor. There was no finding that there was any intentional throwing Mr. Ketcham against the car and banging his head intentionally. The court found that the banging of his head was unintentional. Inadvertent. Yes, same thing. Okay. Thank you. I see I'm over time. All right. Well, you've reserved three minutes for rebuttal, so we'll hear from you again. Thank you, Mr. Shames. We'll now hear from Ms. Quinn. Good morning. May it please the Court. My name is Mary Kate Quinn, and I represent the appellees, Michael Hutchins, Alan Patterson, and the city of Mount Vernon. Plaintiff's argument on appeal focuses on his subjective understanding of the situation and whether or not he understood he was under arrest. This is the wrong inquiry. These are not the facts that Magistrate Judge Krause used to make his decision, and Magistrate Judge Krause was correct in that. Plaintiff continuously argues that the officers can't rely on the third gram prong of the subject resisting arrest because he himself did not understand he was under arrest. Well, in fairness, I do think the argument is that the manifestations made by Mr. Ketchum would have reflected his unawareness that they were law enforcement officers. I mean, like, why would you yell for the police if you understood that the people who are arresting you are the police? Judge, at the time that plaintiff began yelling for the police and screaming 9-1-1, the officers had already begun the process of initiating a seizure. So once they're starting to initiate a seizure, once he starts screaming 9-1-1, everything's moving very quickly. They need to get him secured for his safety and for their safety. The seizure had begun at the point that they're screaming for 9-1-1. And again, from the officer's standpoint, Patterson approached with a badge around his neck, his gun properly holstered. He reasonably believed that this person was Dominic Uzillia, who had an active arrest warrant, and he asked, who are you? Plaintiff took a defensive stance and responded challengingly, who are you? It's reasonable for Officer Patterson to believe that this was a wanted individual who didn't want to be arrested. So from the district court made the proper finding that under these facts, it was reasonable for the officers to believe that Mr. Ketchum was resisting arrest. And a panel of this court has already held in Aponte v. Canberra that the subjective belief of the arrestee is irrelevant, and this is consistent with Krause's decision. And incredibly, aside from not double locking the handcuffs, which I plan on addressing, Plaintiff doesn't actually argue that the manner in which he was seized was unreasonable. The officers began the actions of taking him into custody by grabbing his hands and trying to handcuff him. He immediately began resisting, so they placed him against the fence, used an armbar, which is a commonly used law enforcement technique, which he himself recognized because he was a former probation officer. They used the armbar. They did get him in cuffs. They got him into the car. He inadvertently had hit his head on the doorframe, but that is not an issue. And once he was in the car, he realized he was in handcuffs, complained that they were tight, and he testified that within seconds the officers removed the handcuffs. None of that was unreasonable, and based on the factual findings from the court, the fact that excessive force was not used here is a sound finding from the district court. And I do want to address the manner in which the handcuffs were applied. The court found that the cuffs were not double-locked, which prevents further tightening, because of Plaintiff's own level of resistance. His level of resistance prevented them from doing that, and in any event, not double-locking handcuffs is not per se unreasonable, and under these circumstances it was not unreasonable. Plaintiff argues that the court incorrectly held that he had to have proven serious physical injury, but a very clear reading of the district court's decision here shows that he properly considered all three factors laid out in Fugini v. City of New York, which were the manner in which the handcuffs were applied, their response to his complaints of tightness, and the injury. The court very clearly sets forth those three factors in its decision. Another point that Plaintiff improperly focuses on in his arguments is that the officers didn't have probable cause to arrest him, and probable cause isn't the central issue of this case. When Plaintiff withdrew his false arrest claim, he prevented the district court from ruling on probable cause as a dispositive or central issue. Again, in Aponte, the court found that the unlawfulness of an arrest does not make the force used per se unreasonable, and in any event, this was not an unlawful seizure. It was reasonable for the officers to believe that this was Dominic Uzillia based on Plaintiff's admitted resemblance to him. They tried to investigate further, and Plaintiff squashed that attempt. They said, who are you? And he said, who are you? Took a defensive stance. At that point, it was reasonable for them to believe, yes, this is an individual who is wanted, doesn't want to be taken into arrest. They began a seizure in a reasonable manner. With that, judges, if you have any other questions, I'm happy to answer them, but we rely on our papers. Thank you very much. Thank you. We'll hear from Mr. Cheney for three minutes of rebuttal. Thank you, Your Honor. Two facts that were not discussed in the last argument were, number one, Officer Patterson at no time during this interaction identified himself as a police officer. Well, undoubtedly. That is the factual finding of Judge Krause. And a crucial one. Now, Officer Patterson, in defending his actions, never said that he had a basis or there was some justification for him not doing so. He said, I did identify myself as a police officer. So there's never been an excuse offered for not doing so. You have him not identifying himself. You have the citizen saying, who are you? And the police officer, for whatever reason, not responding, a police officer. And then you have the citizen, who the officer is struggling with, screaming for help and for someone to call the police. And again, for whatever reason, the officers chose not to say, we are the police. In this respect, I would direct the court to the case of Louth v. Town of Chief Tawanga, which is cited in our papers. Now, the issue here was about malicious prosecution and whether there was arguable probable cause to charge someone with resisting arrest. Slightly different issue than we're dealing with here, but I argue the point is the same in terms of whether there's a reasonable basis for an officer to say or think that someone's resisting arrest. In that case the basis for recovery with regard to injury is different and the consideration with regard to resisting arrest, because resisting arrest, if one has a reasonable belief that they're being falsely or illegally arrested or taken, then they have every right as a citizen to resist that. And so to some degree, if Ketchum had been charged with resisting arrest, he probably had a good defense. But that doesn't mean the fact that it might have been better policy. As a citizen, I agree 100% that it would have been better policy for the police officers when they first confronted each other and said, listen, we're from the Mount Vernon Police. We're here to talk to you. Are you willing to talk to us? And then if he starts to give them trouble, then they take him into custody. But there's play in the joints in the context, and the court cases recognize that, in the context of liability. Now, whether we like that or not, you think this fits within the context of where libel is imposed under Graham, right? I'm sorry. Do you think that this fits within Graham, though? Unquestionably, Your Honor. The question is one of objective reasonableness. So putting aside what Mr. Ketchum thought, putting aside whether the officer intended to hit his head on the car or not, none of which matters, it's an objective standard. And Graham v. Conner, which involved a person who was having a diabetic insulin reaction that the police officers in that case mistook for some sort of resistance or erratic behavior, in that case the court said, okay, police officers can make mistakes. The lower courts excused this use of force because they said, well, it wasn't malicious. And similar reasoning was used here. But the question is not whether it was malicious. The question is whether their actions were reasonable under the circumstances. And you cannot get around the fact that, first of all, he was trained to try to engage a suspect verbally and to give him an opportunity to comply before resorting to force. His testimony was that he did not do so. He immediately used force. Combined with the fact that these – Well, he didn't immediately use force, right? I mean, there was an exchange in which your client was nonresponsive, right? He said, who are you? Mr. Ketchum – sorry, Mr. Ketchum said, who are you? The officer then said, I'm taking you in, and grabbed his wrist, twisted his arm behind his back. Now, the policies which are in the record, Your Honors, they're at A-472, say that a police officer is supposed to de-escalate a situation, call for backup, keep your distance from the subject, inform them that they're being placed under arrest. He did none of these things, and when we consider the objective facts as they were known to Officer Patterson, you have to also consider the training that he received. Those were objective facts that were known to him at the time. He disregarded that. He disregarded the clear signs of the – I don't recall the magistrate discussing that. He didn't. Did you object or did you argue that to the magistrate? We put it into evidence at the trial, Your Honor, and we had the officer acknowledge that. I'll go back and look at the record. Is it in the trial? Yes, it is, Your Honor. Can you say that you argued it before the magistrate as part of the transcript? I'm sorry? Is it part of the appendix, your argument? Yes. Okay. Yes, and if I may add one last thing, to use Officer Patterson's testimony himself at A-206 with regard to whether he identified himself as a police officer, he said he did it. Of course, he's done it hundreds of times. That's standard procedure. We have to identify ourselves as police officers. All right. All right. Well, thank you both. We will reserve decision. Thank you.